## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**JACE WASHINGTON**                                    **CIVIL ACTION**

**versus**                                                        **NO. 13-6120**

**ROBERT TANNER, WARDEN**                    **SECTION: "B" (3)**

### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Jace Washington, is a state prisoner incarcerated at the B.B. "Sixty" Rayburn Correctional Center in Angie, Louisiana.  He was convicted of manslaughter under

Louisiana law on October 14, 2009,[1] and he was sentenced to a term of twenty-five years imprisonment on June 17, 2010.[2]  On May 6, 2011, the Louisiana First Circuit Court of Appeal affirmed his conviction and sentence.[3]  The Louisiana Supreme Court then denied his related writ application on March 30, 2012.[4]

On or about June 26, 2012, petitioner filed an application for post-conviction relief with the state district court.[5]  That application was denied on July 17, 2012.[6]  His related writ applications were then likewise denied by the Louisiana First Circuit Court of Appeal on October 29, 2012,[7] and by the Louisiana Supreme Court on September 13, 2013.[8]

---

[1]  State Rec., Vol. V of VIII, trial transcript, p. 748; State Rec., Vol. II of VIII, minute entry dated October 14, 2009; State Rec., Vol. II of VIII, jury verdict form.

[2]  State Rec., Vol. V of VIII, transcript of June 17, 2010, p. 70; State Rec., Vol. II of VIII, minute entry dated June 17, 2010.

[3]  State v. Washington, No. 2010 KA 1807, 2011 WL 2616850 (La. App. 1st Cir. May 6, 2011); State Rec., Vol. I of VIII.

[4]  State ex rel. Washington v. State, 85 So.3d 105 (La. 2012); State Rec., Vol. I of VIII.

[5]  State Rec., Vol. I of VIII.

[6]  State Rec., Vol. I of VIII, Order dated July 17, 2012.

[7]  State v. Washington, No. 2012 KW 1364 (La. App. 1st Cir. Oct. 29, 2012); State Rec., Vol. I of VIII.

[8]  State ex rel. Washington v. State, 120 So.3d 277 (La. 2013); State Rec., Vol. I of VIII.

In the interim, petitioner filed another application for post-conviction relief with the state district court on or about February 22, 2013.[9]  That application was denied on April 4, 2013.[10]

On or about October 9, 2013, petitioner filed the instant federal application for *habeas corpus* relief.[11]  The state concedes that the application is timely.[12]  However, the state argues that not all of petitioner's claims are exhausted.  Specifically, the state argues that only two claims petitioner asserted on direct appeal (i.e. that there was insufficient evidence to support his conviction and that his co-defendant's confession was improperly excluded as hearsay) are exhausted.  The state opines that his remaining five claims, which were asserted in the state post-conviction proceedings, were not properly exhausted because his related writ applications to the Louisiana First Circuit Court of Appeal and the Louisiana Supreme Court were improperly filed.[13]  The state therefore argues that petitioner's federal application should be dismissed *without prejudice* as a mixed petition.[14]  See, e.g., Alexander v. Johnson, 163 F.3d 906, 908 (5th Cir. 1998) ("A habeas petition containing both exhausted and unexhausted claims is a 'mixed' petition which should be dismissed without prejudice.").

---

[9] State Rec., Vol. I of VIII.

[10]  State Rec., Vol. I of VIII, Order dated April 4, 2013.

[11]  Rec. Doc. 1.  After filing this federal application, petitioner also filed with the state district court a motion for new trial which was denied on October 17, 2013.  State Rec., Vol. I of VIII.

[12]  Rec. Doc. 9, p. 5.

[13]  The state notes that petitioner's Court of Appeal writ application was improperly filed because he failed to attach necessary supporting documentation.  The state also argues that the Louisiana Supreme Court writ application was filed late.  Rec. Doc. 9, p. 6.

[14]  Rec. Doc. 9, pp. 5-7.

However, the Court notes that the state alternatively argues that petitioner's claims have no merit.[15] It is beyond cavil that a federal court has the authority to deny a *habeas* claim on the merits regardless of whether the petitioner exhausted his state court remedies and whether exhaustion is waived by the state.  See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.");  Jones v. Jones, 163 F.3d 285, 299 (5th Cir. 1998); Woods v. Cain, Civ. Action No. 06-2032, 2008 WL 2067002, at *8 n.8 (E.D. La. May 13, 2008). Because petitioner's claims have no merit, the undersigned recommends that they be dismissed *with prejudice* on that basis in the interest of judicial economy.

I.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28

---

[15]  Rec. Doc. 9, pp. 8-24.

U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application

for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a

determination of a factual issue made by a State court shall be presumed to be correct.  The applicant

shall have the burden of rebutting the presumption of correctness by clear and convincing

evidence.").

       As to pure questions of law and mixed questions of law and fact, a federal court must

defer to the state court's decision on the merits of such a claim unless that decision "was contrary

to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary

to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."  Bell, 535

U.S. at 694.

       Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals

has explained:

> A state court decision is contrary to clearly established precedent if
> the state court applies a rule that contradicts the governing law set
> forth in the [United States] Supreme Court's cases.  A state-court
> decision will also be contrary to clearly established precedent if the
> state court confronts a set of facts that are materially
> indistinguishable from a decision of the [United States] Supreme
> Court and nevertheless arrives at a result different from [United
> States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets,

and footnotes omitted).

       Regarding the "unreasonable application" clause, the United States Supreme Court

has held:  "[A] state-court decision is an unreasonable application of our clearly established

precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the

facts of a particular prisoner's case."  White v. Woodall, 134 S. Ct. 1697, 1706 (2014).  However,

the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state
> court unreasonably applies this Court's precedent; it does not require
> state courts to extend that precedent or license federal courts to treat
> the failure to do so as error.  Thus, if a habeas court must extend a
> rationale before it can apply to the facts at hand, then by definition
> the rationale was not clearly established at the time of the state-court
> decision.  AEDPA's carefully constructed framework would be
> undermined if habeas courts introduced rules not clearly established
> under the guise of extensions to existing law.

Id. (citations and quotation marks omitted).  Therefore, when the Supreme Court's "cases give no

clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that

the state court unreasonably applied clearly established Federal law."  Wright v. Van Patten, 552

U.S. 120, 126 (2008) (quotation marks and brackets omitted).  The Supreme Court has also

expressly cautioned that "an unreasonable application is different from an incorrect one."  Bell, 535

U.S. at 694.  Accordingly, a state court's merely incorrect application of Supreme Court precedent

simply does not warrant *habeas* relief.  Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011)

("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of

the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so.

As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary
> conclusion was unreasonable.
>    If this standard is difficult to meet, that is because it was
> meant to be.  As amended by AEDPA, § 2254(d) stops short of

> imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  It preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal.  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also

Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts – from

using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state

courts.").

 The Supreme Court has expressly warned that although "some federal judges find [28

U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law

and apply the strictly deferential standards of review mandated therein.  White v. Woodall, 134 S.

Ct. 1697, 1701 (2014).

II.  Facts

 On direct appeal, the Louisiana First Circuit Court of Appeal summarized the facts

of this case as follows:

>  On the evening of April 29, 2007, defendant, Glenn J. Carter, Edric R. Cooper and Grant A. Gethers entered a mobile home in Slidell, Louisiana, that was occupied by Jose Luis Martinez-Carpio (the victim) and several other individuals with the intent of robbing the occupants.  All four assailants had their faces covered.  Defendant was armed with a 9-millimeter semiautomatic handgun.  Carter and

- 7 -

Cooper were also each armed with a handgun.  Carter and Gethers went into the living room area, while defendant and Cooper entered a bedroom and pointed their guns at the two men inside.  While Cooper was demanding money from the men, sudden gunshots were heard from the living room.  All four assailants fled the mobile home.  Cooper fired one shot before his gun jammed, but no one was hit by that bullet.  The parties jointly stipulated that the victim was shot by Carter and died that same day.[16]

III.  Petitioner's Claims[17]

A.  Sufficiency of the Evidence

Petitioner claims that there was insufficient evidence to support his conviction.  On direct appeal, the Louisiana First Circuit Court of Appeal denied that claim, holding:

> [D]efendant contends the evidence was insufficient to support his conviction.  Specifically, he argues the evidence did not establish either that he had specific intent to kill or cause great bodily harm to the victim or that he participated in an attempted robbery.  He maintains he was not a principal to any crime and stresses that Carter confessed to shooting the victim.
>      ....
>      The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier-of-fact could have found the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).  See also La.C.Cr.P. art. 821B; State v. Ordodi, 06-0207 (La. 11/29/06), 946 So.2d 654, 660.  The Jackson v. Virginia standard of review incorporated in La.C.Cr.P. art. 821 is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt.  When analyzing circumstantial evidence, La. R.S. 15:438 provides that the factfinder

---

[16]  State v. Washington, No. 2010 KA 1807, 2011 WL 2616850, at *1 (La. App. 1st Cir. May 6, 2011); State Rec., Vol. I of VIII.

[17]  For ease of analysis, petitioner's claims are addressed herein in a different order than as presented in the federal application.  However, all claims are addressed.

must be satisfied the overall evidence excludes every reasonable hypothesis of innocence.  State v. Patorno, 01-2585 (La.App. 1st Cir. 6/21/02), 822 So.2d 141, 144.

On appeal, defendant contends the evidence was insufficient to support his conviction because the evidence did not establish either that he shot the victim or that he had specific intent to kill him or cause him great bodily harm.  In fact, the parties stipulated at trial that the victim was shot by Carter.  However, the theory of the state's case was that defendant was guilty of felony second degree murder, not because he shot the victim or had specific intent to kill or cause him great bodily harm, but because defendant was a principal to the attempted armed robbery that resulted in the victim's death.  The jury returned a verdict finding defendant guilty of the responsive offense of manslaughter.

Louisiana Revised Statutes 14:31 provides, in pertinent part, that:

A. Manslaughter is:

* * * *

(2) A homicide committed, **without any intent to cause death or great bodily harm**.
(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30 or 30.1, or of any intentional misdemeanor directly affecting the person ...
(Emphasis added.)

Thus, under La. R.S. 14:31 A(2)(a), the state is not required to prove the defendant possessed specific intent to kill or inflict great bodily harm in order for the defendant to be guilty of manslaughter. This provision defines manslaughter as the killing of a human being when the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in La. R.S. 14:30 (first degree murder) and 14:30.1 (second degree murder), or any intentional misdemeanor directly affecting the person, even though he has no intent to kill or to inflict great bodily harm.  See State v. Brumfield, 329 So.2d 181, 189-90 (La. 1976); State v. Anseman, 607 So.2d 665, 668-69 (La.App. 5th Cir. 1992), writs denied, 613 So.2d 989-90 (La. 1993).  Under the explicit language of this provision,

specific intent to kill or to inflict great bodily harm is not an essential element of manslaughter under La. R.S. 14:31A(2)(a).

Moreover, "[a]ll persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals." La. R.S. 14:24. Mere presence at the scene of a crime does not make a person a principal to the crime. A defendant may only be convicted as a principal for those crimes for which he personally has the requisite mental state. State v. Neal, 00-0674 (La. 6/29/01), 796 So.2d 649, 659, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002).

In the instant case, the trial court in its instructions to the jury identified aggravated assault as an intentional misdemeanor directly affecting the person that could possibly support a manslaughter conviction under La. R.S. 14:31. Under La. R.S. 14:37A, an aggravated assault is an "assault" committed with a dangerous weapon. "Assault" is defined in La. R.S. 14:36 as "an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery." "Battery" is defined by La. R.S. 14:33, in pertinent part, as the "intentional use of force or violence upon the person of another...."

To establish defendant's guilt, the state presented the following testimony of Cooper, one of the participants in the attempted robbery who pled guilty to manslaughter as a result of the victim's death. Cooper testified that he, Carter, Gethers and defendant went to the mobile home where the victim and several other individuals resided for the specific purpose of committing an armed robbery (which he described as "going to hit the lick") to get money. After arriving there in two vehicles, they covered their faces to conceal their identities. To further facilitate the plan, Cooper, Carter and defendant each armed themselves with a handgun. Once inside, Cooper and defendant went into a bedroom occupied by two men. While he and defendant held their guns on the men, Cooper demanded money from them. According to Cooper, they heard sudden gunshots from the living room at that point. All four perpetrators fled the mobile home. Cooper got into Carter's vehicle and defendant got into Gethers' car, and they left the scene. Carter's mobile phone began ringing with an incoming call, but he did not answer it. At trial, the state introduced records establishing multiple calls between Carter and defendant's mobile phones in the period shortly after the shooting.

During the subsequent police investigation, the police seized a 9-millimeter handgun from defendant's residence. The gun, which belonged to defendant's father, was introduced into evidence at trial. During his testimony, Cooper identified it as being the same gun that defendant used during the attempted robbery. Additionally, the state introduced the testimony of Carlton Davis and Stanley Doyle, who each testified that Cooper, accompanied by defendant and Gethers, visited them in Vicksburg, Mississippi, the week before the attempted robbery. Both Davis and Doyle testified they saw defendant in possession of a semiautomatic gun during that visit.

Defendant testified in his own defense at trial. He denied ever being at the victim's mobile home or having any knowledge of the shooting. According to his testimony, he was at home visiting with Gethers at the time the shooting occurred. He denied being with Cooper at any time that evening. Defendant further denied being in possession of a handgun, either during the visit to Mississippi or on the day of the shooting.

Defendant's father, Henry Washington, testified at trial that defendant was at home from approximately 8:40 p.m. until 9:30 p.m. on the evening of the shooting. The police first received a report of the shooting at 9:17 p.m. Washington testified that, although defendant was aware he had a handgun, defendant did not know where he kept it, which was under a desk in Washington's home office. He further indicated that the gun was present in that location on the day of the shooting.

Hence, the jury was presented with conflicting testimony in the instant case. The trier-of-fact is free to accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. An appellate court will not assess the credibility of witnesses or reweigh the evidence to overturn a trier-of-fact's determination of guilt. State v. Lofton, 96-1429 (La.App. 1st Cir. 3/27/97), 691 So.2d 1365, 1368, writ denied, 97-1124 (La. 10/17/97), 701 So.2d 1331. We are constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases. See State v. Mitchell, 99-3342 (La. 10/17/00), 772 So.2d 78, 83.

After a thorough review of the record, we find the evidence sufficient to support a conviction for manslaughter. Defendant participated in a plan with his co-perpetrators to arm themselves with handguns in order to rob the occupants of the mobile home wherein

the victim resided.  It was implicit in the plan that the handguns would be used to threaten and coerce the occupants of the mobile home into giving up their money, thereby intentionally placing them in reasonable apprehension of receiving a battery.  Pointing a gun at or threatening an individual with a gun constitutes the crime of aggravated assault.  See La. R.S. 14:36 & 37A; State v. Julien, 09-1242 (La.App. 3d Cir. 4/7/10), 34 So.3d 494, 499; State v. Fountain, 93-2561 (La.App. 4th Cir. 12/15/94), 647 So.2d 1254, 1257, writ denied, 95-0140 (La. 6/23/95), 656 So.2d 1010.  Moreover, aggravated assault is an intentional misdemeanor directly affecting the person that can support a conviction for manslaughter.  See Brumfield, 329 So.2d at 189-90.  In the instant case, it was while the perpetrators were attempting to execute the planned robbery, using handguns to threaten and coerce the mobile home's occupants, that the victim was shot and killed by one of defendant's co-perpetrators.  Thus, the proof of defendant's participation as a principal to the aggravated assault upon the victim and the other occupants was sufficient to support his conviction for manslaughter.  See La. R.S. 14:24 and 14:31A(2)(a).

The guilty verdict returned in this case indicates the jury accepted the state's evidence, particularly the testimony of Cooper that defendant participated in the planned assault upon the mobile home's occupants that resulted in the victim's death, and rejected defendant's claim that he was at home at the time of the shooting and was innocent of any involvement therein.  See State v. Andrews, 94-0842 (La.App. 1st Cir. 5/5/95), 655 So.2d 448, 453.  We cannot say that the jury's determination was irrational under the facts and circumstances presented to them.  See Ordodi, 946 So.2d at 662.  An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the trier-of-fact and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected, by the trier-of-fact.  See State v. Calloway, 07-2306 (La. 1/21/09), 1 So.3d 417, 418 (per curiam).  When a case involves circumstantial evidence and the trier-of-fact reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt.  State v. Captville, 448 So.2d 676, 680 (La. 1984).  Accordingly, we are convinced that, viewing the evidence in the light most favorable to the state, any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that defendant was guilty of manslaughter.

We find no error in the denial of defendant's motion for post-verdict judgment of acquittal.  See La.C.Cr.P. art. 821B.

Moreover, even if the evidence did not support defendant's manslaughter conviction, he would not automatically be entitled to a reversal.  If a defendant does not timely object to an instruction on a responsive verdict that is not supported by the evidence and the jury returns a verdict of guilty of that responsive offense, the defendant may not complain on appeal that the evidence does not support the responsive verdict to which he failed to object.   Under such circumstances, the conviction of the responsive offense may be affirmed, whether or not the evidence supports the verdict, if the evidence is sufficient to support the offense charged.  State *ex rel.* Elaire v. Blackburn, 424 So.2d 246, 251-52 (La. 1982), cert. denied, 461 U.S. 959, 103 S.Ct. 2432, 77 L.Ed.2d 1318 (1983).

The record does not reflect that defendant objected herein to the inclusion of manslaughter as a responsive offense.   Thus, defendant would be entitled to a reversal of his conviction only if the evidence is insufficient to support a conviction of the charged offense, second degree murder.   See State v. Collins, 09-2102 (La.App. 1st Cir. 6/28/10), 43 So.3d 244, 251.  Based on our review, we find the evidence was sufficient to support a conviction for second degree murder.

Louisiana Revised Statutes 14:30.1, prior to amendment by Acts 2009, No. 15 Sec. 1, provided, in pertinent part, that:

A. Second degree murder is the killing of a human being:

\* \* \* \*

(2)(a) When the offender is engaged in the perpetration or attempted perpetration of ... armed robbery ... even though he has no intent to kill or to inflict great bodily harm.

This provision defines second degree murder as the killing of a human being when the offender is engaged in the perpetration or attempted perpetration of certain enumerated felonies, including armed robbery, even though he has no intent to kill or to inflict great bodily harm.  See State v. Goodley, 01-0077 (La. 6/21/02), 820 So.2d 478, 483.  Thus, under the explicit language of this provision,

specific intent to kill or to inflict great bodily harm is not an essential element of felony murder under La. R.S. 14:30.1A(2).

In the instant case, the state presented testimony establishing that defendant participated in a plan to rob the occupants of the mobile home in which the victim resided. Furthermore, defendant took an active role in the attempted robbery, holding a handgun on occupants of the mobile home while money was demanded from them. It was during the execution of the planned assault and robbery of the occupants that the victim was shot and killed by one of defendant's co-perpetrators. As previously noted, the guilty verdict returned by the jury reflects its acceptance of the state's evidence and rejection of the claim of innocence presented by the defendant's own testimony. Thus, the proof of defendant's participation in the attempted armed robbery was sufficient to support a conviction as a principal to second degree murder. See La. R.S. 14:24 and 14:30.1A(2). As the Supreme Court stated in State v. Kalathakis, 563 So.2d 228, 231 (La. 1990), "the *mens rea* of the underlying felony [provides] the malice necessary to transform an unintended homicide into a murder." We are convinced that, viewing the evidence in the light most favorable to the state, any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that defendant was guilty of second degree murder. See La.C.Cr.P. art. 821B.

This assignment of error lacks merit.[18]

The Louisiana Supreme Court then likewise denied relief without assigning additional reasons.[19]

Because a sufficiency of the evidence claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting petitioner's claim unless he shows that the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Taylor v. Day, Civ. Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213

---

[18] State v. Washington, No. 2010 KA 1807, 2011 WL 2616850, at *1-6 (La. App. 1st Cir. May 6, 2011); State Rec., Vol. I of VIII.

[19] State *ex rel.* Washington v. State, 85 So.3d 105 (La. 2012); State Rec., Vol. I of VIII.

F.3d 639 (5th Cir. 2000). For the following reasons, the Court finds that petitioner has made no such showing.

As correctly noted by the state court, claims of insufficient evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979), which held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. Accordingly, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.'" Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)) (emphasis added); see also Cavazos v. Smith, 132 S. Ct. 2, 4 (2011) ("[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. ... Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold."). Moreover, because the state court's decision applying the already deferential Jackson standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential." Parker v. Matthews, 132 S. Ct. 2148, 2152 (2012); see also Coleman v. Johnson, 132 S. Ct. 2060, 2062 (2012).

Further, it must be remembered that Louisiana's circumstantial evidence standard requiring that every reasonable hypothesis of innocence be excluded does *not* apply in federal

*habeas corpus* proceedings; in these proceedings, *only* the <u>Jackson</u> standard need be satisfied, even if state law would impose a more demanding standard of proof. <u>Foy v. Donnelly</u>, 959 F.2d 1307, 1314 n.9 (5th Cir. 1992); <u>Higgins v. Cain</u>, Civ. Action No. 09-2632, 2010 WL 890998, at *21 n.38 (E.D. La. Mar. 8, 2010), <u>aff'd</u>, 434 Fed. App'x 405 (5th Cir. 2011); <u>Williams v. Cain</u>, No. 07-4148, 2009 WL 224695, at *4 (E.D. La. Jan. 29, 2009), <u>aff'd</u>, 408 Fed. App'x 817 (5th Cir. 2011); <u>Davis v. Cain</u>, Civ. Action No. 07-6389, 2008 WL 5191912, at *14 (E.D. La. Dec. 11, 2008); <u>Wade v. Cain</u>, Civil Action No. 05-0876, 2008 WL 2679519, at *6 (W.D. La. May 15, 2008) (Hornsby, M.J.) (adopted by Stagg, J., on July 3, 2008), <u>aff'd</u>, 372 Fed. App'x 549 (5th Cir. Apr. 9, 2010); <u>see also</u> <u>Coleman</u>, 132 S. Ct. at 2064 ("Under <u>Jackson</u>, federal courts must look to state law for the substantive elements of the criminal offense, but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." (citation and internal quotation marks omitted)).

      In the instant case, it was uncontested that petitioner did not fire the shot that killed the victim; on the contrary, it was stipulated that Carter killed the victim.[20]  However, that is not determinative, in that Louisiana law provides:

> All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.

La. Rev. Stat. Ann. § 14:24.  Under the law of principals, all persons involved in the commission of a crime are equally culpable, and it is of no consequence which of the perpetrators fired the actual

---

[20]  State Rec., Vol. IV of VIII, trial transcript, p. 471.

shot that killed the victim.  See, e.g., State v. Massey, 91 So.3d 453, 463-64 (La. App. 5th Cir. 2012); State v. Page, 28 So.3d 442, 449-50 (La. App. 5th Cir. 2009).

In this case, petitioner's knowing participation in and intent to commit the underlying crime were established through the testimony of the witnesses at trial, including his co-defendant Edric Cooper.  Although petitioner argues that those witnesses were not credible, "under Jackson, the assessment of the credibility of witnesses is generally beyond the scope of review."  Schlup v. Delo, 513 U.S. 298, 330 (1995); accord Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005) ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); McCowin v. Scott, No. 93-5340, 1994 WL 242581, at *2 (5th Cir. May 26, 1994) (A "challenge of the jury's credibility choice fails to satisfy the Jackson standard for habeas relief."); Phillips v. Cain, Civ. Action No. 11-2725, 2012 WL 2564926, at *14 (E.D. La. Apr. 11, 2012), adopted, 2012 WL 2565025 (E.D. La. July 2, 2012); Picou v. Cain, Civ. Action No. 06-6258, 2007 WL 1521021, at *5 (E.D. La. May 22, 2007).

Simply put, for the reasons explained in detail by the Louisiana First Circuit Court of Appeal, it cannot be said that the guilty verdict in this case was *irrational* when the evidence is viewed *in the light most favorable to the prosecution*.  Therefore, petitioner has not shown that the state court's decision rejecting this claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, under the doubly-deferential standards of review which must be applied by this federal *habeas* court, the claim should be denied.

<u>B.  Exclusion of Co-Defendant's Confession</u>

Petitioner also claims that the confession of his co-defendant was improperly excluded as hearsay.  On direct appeal, the Louisiana First Circuit Court of Appeal denied that claim, holding:

> [D]efendant contends the trial court erred in excluding as inadmissible hearsay statements made by his co-perpetrator, Glenn Carter, which he claims exculpated him and were crucial to his defense.  The statements in question were made by Carter to the police several days after the murder.  Defendant argues the statements exculpate him, because Carter describes only himself and Cooper as being involved in the attempted robbery.[FN 2]  Defendant maintains the statements would have cast serious doubts on Cooper's crucial trial testimony that defendant was involved in the crime.  Hence, he asserts the exclusion of the statements deprived him of his right to fully confront and cross-examine the state's witnesses and to his constitutional right to prepare a defense.
>
> > [FN 2]  In the statements, Carter never specifically states that only two participants were involved in the attempted robbery, nor was he questioned on that point.  Nevertheless, an inference that there were only two participants reasonably can be drawn from his failure to mention anyone other than himself and Cooper as participants.
>
> Generally, hearsay is not admissible, unless subject to an exception found in the Louisiana Code of Evidence or as otherwise provided by legislation. La. C.E. art. 802.  Defendant argues that Carter's statements were admissible in the present case as statements against penal interest. Louisiana Code of Evidence article 804, which delineates certain exceptions to the general rule against admissibility of hearsay statements in cases where the declarant is unavailable, provides, in pertinent part, as follows:
>
> > **A. Definition of unavailability.** Except as otherwise provided by this Code, a declarant is "unavailable as a witness" when the declarant cannot or will not

appear in court and testify to the substance of his statement made outside of court....

* * * *

**B.  Hearsay exceptions.**  The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

* * * *

**(3) statement against interest.**  A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true.  **A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.**  (Emphasis added.)

Thus, when a statement tending to expose the declarant to criminal liability is offered to exculpate the accused, Article 804B(3) expressly requires corroborating circumstances indicating trustworthiness.  The burden of satisfying the corroboration and trustworthiness requirement rests upon the accused.  State v. Hammons, 597 So.2d 990, 996-97 (La. 1992).  That burden may be satisfied by evidence independent of the statement which tends, either directly or circumstantially, to establish a matter asserted by the statement.  Circumstantial evidence of the veracity of the declarant as to the portion of the statement exonerating the accused is generally sufficient.  Typical corroborating circumstances include statements against the declarant's interest to an unusual or devastating degree, or the declarant's repeating of consistent statements, or the fact that the declarant was not likely motivated to falsify his statements for the benefit of the accused.  Hammons, 597 So.2d at 997.

Under compelling circumstances, formal rules of evidence must yield to a defendant's constitutional right to confront and

- 19 -

cross-examine witnesses and to present a defense.   Normally, inadmissible hearsay may be admitted if it is reliable, trustworthy and relevant, and if its exclusion would compromise the defendant's right to present a defense.  See U.S. Const. amend. VI; La. Const. art. I, § 16; State v. Van Winkle, 94-0947 (La. 6/30/95), 658 So.2d 198, 202; State v. Gremillion, 542 So.2d 1074, 1078 (La.1989).

In the instant case, after trial had already begun, the trial court held a hearing on defendant's motion in limine concerning the admissibility of Carter's prior statements.  During the hearing, Carter was called to testify, but invoked his Fifth Amendment right against self-incrimination.   Defendant argued that, since Carter was unavailable to testify, his prior statements were admissible under La. C.E. art. 804B(3).  The state responded that the statements were inadmissible, because defendant failed to establish the necessary corroborating circumstances indicating trustworthiness of the statements, especially since Carter testified at a suppression hearing that the statements in question were coerced by the police.  The trial court ruled that Carter's statements were inadmissible because the two prior statements were inconsistent with each other in describing Carter's participation in the instant crime and were not sufficiently corroborated by other circumstances.

On appeal, defendant contends the trial court erred because Carter's statements that there were only two participants in the attempted armed robbery were corroborated by the testimony of Jose Roberto Romero-Echegoyen, who testified at trial, and Luis Fernando Martinez-Avila, who testified at the preliminary examination hearing held in this matter.  We disagree.  These men were roommates of the victim and were present in the mobile home when the shooting occurred, although not in the same room.  They each testified to seeing only two assailants.  However, while they testified to seeing only two assailants, their overall testimony indicates there was at least one more.  During his trial testimony, Romero-Echegoyen described hearing the fatal gunshots coming from the living room while he was in his bedroom being held at gunpoint by two men. This scenario requires that at least three assailants were involved. Defendant's assertion that there was no evidence to suggest the presence of anyone other than Carter and Cooper at the crime scene is mistaken.

Defendant also points out that Cooper's trial testimony corroborated Carter's statements on several points.  Nevertheless, the fact that Carter's statements and Cooper's testimony may have agreed on some incidental points is of little avail to defendant.  Cooper's

testimony was clearly inconsistent with Carter's statements on the crucial issue of the number of participants in the attempted robbery. Moreover, it was on this precise issue that defendant sought to introduce the statements.

Under Article 804B(3), when a hearsay statement tending to expose the declarant to criminal liability is offered for the purpose of exculpating the accused, it is admissible only if the defendant establishes corroborating circumstances indicating trustworthiness. Hammons, 597 So.2d at 996-97.   In view of the inconsistencies between the two prior statements, as well as Carter's testimony at the suppression hearing regarding coercion, we find no error or abuse of discretion in the trial court's exclusion of the statements as being inadmissible hearsay evidence.   Defendant failed to present the necessary corroborating evidence to indicate the trustworthiness of the statements.

This assignment of error is without merit.[21]

The Louisiana Supreme Court then likewise denied relief without assigning additional reasons.[22]

To the extent that petitioner is contending that the state courts misapplied Louisiana's hearsay rules, that alone, even if true, would not warrant federal relief.  "The role of a federal habeas court is more limited than that of the state appellate court. We do not sit as a super state supreme court to review error under state law."  Skillern v. Estelle, 720 F2d 839, 852 (5th Cir. 1983). Therefore, "[i]n habeas actions, [a federal court] does not sit to review the mere admissibility of evidence under state law."  Little v. Johnson, 162 F.3d 855, 862 (5th Cir. 1998).   Rather, federal *habeas corpus* relief may be granted only to remedy violations of the Constitution and laws of the United States; violations of state law will not suffice.  28 U.S.C. § 2254; Engle v. Isaac, 456 U.S. 107, 119 (1983).

---

[21]  State v. Washington, No. 2010 KA 1807, 2011 WL 2616850, at *6-9 (La. App. 1st Cir. May 6, 2011); State Rec., Vol. I of VIII.

[22]  State *ex rel.* Washington v. State, 85 So.3d 105 (La. 2012); State Rec., Vol. I of VIII.

Accordingly, with respect to this claim, the only issue properly before this Court is whether the exclusion of Carter's statements constituted a denial of fundamental fairness under federal law.  Little, 162 F.3d at 862 ("[A] state trial court's evidentiary rulings will mandate habeas relief when errors are so extreme that they constitute a denial of fundamental fairness.").  "Erroneous exclusion of evidence is fundamentally unfair if the evidence was material in the sense that it was crucial, critical, and highly significant."  Poretto v. Stalder, 834 F.2d 461, 465 (5th Cir. 1987).

Here, even if the state court's evidentiary ruling was incorrect, which is an issue this Court need not and does not reach, that ruling did not render petitioner's trial fundamentally unfair because Carter's statements were not crucial, critical, and highly significant to petitioner's defense. Even if the statements had been admitted at trial, there is no reasonable probability that the jury would have considered them credible.  Carter was a convicted murderer,[23] a fact to which the parties stipulated at trial.[24]  Moreover, his statements were inconsistent and contrary to the trial testimony of Jose Roberto Romero-Echegoyen, an eyewitness with no motive to lie.  Further, Carter later distanced himself from the statements, claiming that they were coerced.  With these considerations in mind, this Court simply cannot say that the exclusion of the statements rendered petitioner's trial fundamentally unfair.

---

[23]  Prior to petitioner's trial, Carter had already been convicted of second degree murder for his role in this crime, and his conviction had been affirmed by the Louisiana First Circuit Court of Appeal.  State v. Carter, No. 2008 KA 2586, 2009 WL 1706810 (La. App. 1st Cir. June 19, 2009), writ denied, 29 So.3d 1249 (La. 2010).

[24]  State Rec., Vol. IV of VIII, trial transcript, p. 471.

C.  Defective Indictment/Constructive Amendment of the Indictment

Petitioner also claims that his indictment was defective because it failed to specify the "essential elements" of the crime charged.[25]  In a related claim, he also argues that the trial court allowed an impermissible constructive amendment to the indictment.[26]  In the state post-conviction proceedings, the state district court denied those claims, stating that "petitioner has failed to prove grounds upon which relief shall be granted."[27]  His related writ applications were then likewise denied by the Louisiana First Circuit Court of Appeal[28] and the Louisiana Supreme Court.[29]

Petitioner's claim that the indictment was defective clearly fails.  "The sufficiency of a state indictment is not a matter for federal habeas relief unless it can be shown that the indictment is so defective that it deprives the state court of jurisdiction." McKay v. Collins, 12 F.3d 66, 68 (5th Cir.), reh'g granted in part on other grounds sub nom., Williams v. Collins, 12 F.3d 70 (5th Cir. 1994) (per curiam).   The United States Fifth Circuit Court of Appeals has observed that the sufficiency of a state charging instrument is fatally defective only when there are no circumstances under which there could be a valid conviction based on that instrument, and that

---

[25]  Rec. Doc. 1, pp. 19-20.

[26]  Rec. Doc. 1, pp. 20-21.

[27]  State Rec., Vol. I of VIII, Order dated July 17, 2012.

[28]  State v. Washington, No. 2012 KW 1364 (La. App. 1st Cir. Oct. 29, 2012); State Rec., Vol. I of VIII.

[29]  State ex rel. Washington v. State, 120 So.3d 277 (La. 2013); State Rec., Vol. I of VIII.

"determination can be made *only* by looking to the law of the state." <u>Liner v. Phelps</u>, 731 F.2d 1201, 1203 (5th Cir. 1984) (internal quotation marks omitted) (emphasis in original).

In denying petitioner's claim, the state courts obviously found that the indictment was legally sufficient as a matter of state law.  "Where the state courts have held that an indictment is sufficient under state law, a federal court need not address that issue." <u>McKay</u>, 12 F.3d at 68; <u>cf.</u> <u>Levy Gardens Partners 2007, L.P. v. Commonwealth Land and Title Insurance Co.</u>, 706 F.3d 622, 629 (5th Cir. 2013) ("The principle that state courts are the final arbiters of state law is well-settled."); <u>Dickerson v. Guste</u>, 932 F.2d 1142, 1145 (5th Cir. 1991) ("We will not review a state court's interpretation of its own law in a federal habeas corpus proceeding. We do not sit as a 'super' state supreme court in such a proceeding to review errors under state law." (internal citation and quotation marks omitted)).

Moreover, in any event, it is clear that the indictment was in fact proper in this case. Louisiana law expressly authorizes the use of specific "short form" indictments with respect to certain offenses, and the United States Fifth Circuit Court of Appeals has held that their use is constitutional. <u>Liner</u>, 731 F.2d at 1203-04.  Here, petitioner was charged with the crime of second degree murder.  For that charge, a "short form" indictment need only state that "[the accused] committed the second degree murder of [the victim]."  La. Code Crim. P. art. 465(A)(32). Petitioner's indictment sufficiently complied with the provision, charging that petitioner violated "R.S. 14:30.1 SECOND DEGREE MURDER, by killing JOSE LUIS MARTINEZ-CARPIO in the second degree."[30]  <u>See</u> <u>State v. Lee</u>, 52 So.3d 210, 213 (La. App. 1st Cir. 2010) ("Although the

---

[30]  State Rec., Vol. I of VIII, indictment.

supreme court has held that it is essential for the prosecution, when using the short form, to adhere strictly thereto, this rule does not require a literal tracking of the language of the short form. It suffices that the words used by the pleader unmistakably convey the same meaning as those contained in the short form." (citation omitted)). "When a short form indictment is used, it is intended that the defendant use a bill of particulars to procure details as to the statutory method by which he committed the offense." State v. Page, 28 So.3d 442, 453 (La. App. 5th Cir. 2009).

Petitioner's related claim that the trial court allowed an impermissible constructive amendment likewise fails. He notes that while the indictment charged him with "killing" the victim, the state proceeded at trial on the theory that he "aided and abetted" the killer, co-defendant Carter, during an armed robbery. However, that is in no way inconsistent for the following reasons.

The indictment charged petitioner with the crime of second degree murder. Louisiana courts have explained:

> Second degree murder is defined by La. R.S. 14:30.1(A)(2) as the killing of a human being when the offender is engaged in the perpetration or attempted perpetration of one of several enumerated felonies .... State v. Lewis, 05-170 (La.App. 5 Cir. 11/29/05), 917 So.2d 583, 589-90, writ denied, 06-0757 (La. 12/15/06), 944 So.2d 1277. One need not possess specific intent to kill or inflict great bodily harm to be a principal to second degree felony murder. State v. Gurganus, 03-992 (La.App. 5 Cir. 12/30/03), 864 So.2d 771, 775, writ denied, 04-0254 (La. 6/4/04), 876 So.2d 75. Rather, under the felony murder doctrine, the State need only prove the commission of the underlying felony or the attempt thereof. Lewis, 917 So.2d at 590.

State v. Cammatte, 101 So.3d 978, 982 (La. App. 5th Cir. 2012). Armed robbery is one of the enumerated felonies which can support a conviction for second degree murder. La. Rev. Stat. Ann. § 14:30.1(A)(2).

Further, as explained earlier in this opinion, Louisiana law further provides:

> All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.

La. Rev. Stat. Ann. § 14:24.  Under the law of principals, all persons involved in the commission of a crime are equally culpable, and it is of no consequence which of the perpetrators fired the actual shot that killed the victim.  See, e.g., State v. Massey, 91 So.3d 453, 463-64 (La. App. 5th Cir. 2012); State v. Page, 28 So.3d 442, 449-50 (La. App. 5th Cir. 2009).

Accordingly, the prosecution's theory at trial was fully consistent with the charge in the indictment, and there was therefore no "constructive amendment" of the charging document.

For all of the foregoing reasons, petitioner's claims challenging the indictment have no merit and should be rejected.

### D.  Perjured Testimony

Petitioner next argues that his rights were violated by the prosecution's use of perjured testimony.  In the state post-conviction proceedings, the state district court denied that claim, stating that "petitioner has failed to prove grounds upon which relief shall be granted."[31]  His related writ applications were then likewise denied by the Louisiana First Circuit Court of Appeal[32] and the Louisiana Supreme Court.[33]

---

[31]  State Rec., Vol. I of VIII, Order dated July 17, 2012.

[32]  State v. Washington, No. 2012 KW 1364 (La. App. 1st Cir. Oct. 29, 2012); State Rec., Vol. I of VIII.

[33]  State ex rel. Washington v. State, 120 So.3d 277 (La. 2013); State Rec., Vol. I of VIII.

A claim of prosecutorial misconduct, including the use of false testimony, presents a mixed question of law and fact.  Harvey v. Cain, Civ. Action No. 13-2994, 2013 WL 6490484, at *5 (E.D. La. Dec. 10, 2013).  Therefore, to obtain federal relief, petitioner must show that the state court's decision denying this claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  For the following reasons, it is clear that he has not made that showing.

It is true that due process may be violated if a prosecutor knowingly uses false testimony at trial or allows untrue testimony to go uncorrected.  Giglio v. United States, 405 U.S. 150, 153 (1972); Napue v. Illinois, 360 U.S. 264, 269 (1959); Faulder v. Johnson, 81 F.3d 515, 519 (5th Cir. 1996).  However, to obtain relief with respect to such a claim, a petitioner must show that (1) the testimony in question was actually false, (2) the prosecutor knew it was false, and (3) the testimony was material.  Duncan v. Cockrell, 70 Fed. App'x 741, 744 (5th Cir. 2003).  "Evidence is 'false' if, *inter alia*, it is specific misleading evidence important to the prosecution's case in chief. False evidence is 'material' only if there is any reasonable likelihood that it could have affected the jury's verdict."  Id.

Here, petitioner argues that the prosecution must have known that it was presenting perjured testimony because of conflicts between the testimony and the statements of different witnesses and because of inconsistences between the various witnesses' own trial testimony and their prior statements.  However, perjury is the offering of "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory."  United States v. Dunnigan, 507 U.S. 87, 94 (1993).  Further, perjury is not

established by mere contradictory testimony from witnesses or inconsistencies in a witness's testimony.  Kutzner v. Johnson, 242 F.3d 605, 609 (5th Cir. 2001); Koch v. Puckett, 907 F.2d 524, 531 (5th Cir. 1990).  Rather,  contradictory testimony from witnesses or inconsistencies in a witness's testimony at trial are to be resolved by the trier of fact and do not suffice to establish that certain testimony was perjured.  Koch, 907 F.2d at 531.

For these reasons, petitioner has not shown that the state court's decision denying this claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Therefore, relief is not warranted.

### E.  Brady Claim

Petitioner next claims that the state failed to disclosed evidence to the defense in violation of Brady v. Maryland, 373 U.S. 83 (1963), and its progeny.  In the state post-conviction proceedings, the state district court denied these claims, stating that "petitioner has failed to prove grounds upon which relief shall be granted."[34]  His related writ applications were then likewise denied by the Louisiana First Circuit Court of Appeal[35] and the Louisiana Supreme Court.[36]

Because a Brady claim presents a mixed question of law and fact, federal *habeas* relief is available only if petitioner shows that the state court decision "was contrary to, or involved

---

[34]  State Rec., Vol. I of VIII, Order dated July 17, 2012.

[35]  State v. Washington, No. 2012 KW 1364 (La. App. 1st Cir. Oct. 29, 2012); State Rec., Vol. I of VIII.

[36]  State *ex rel.* Washington v. State, 120 So.3d 277 (La. 2013); State Rec., Vol. I of VIII.

an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); DiLosa v. Cain, 279 F.3d 259, 262 & n.2 (5th Cir. 2002).  Again, he has not made that showing.

Regarding such claims, the United States Supreme Court has explained:

The right to a fair trial, guaranteed to state criminal defendants by the Due Process Clause of the Fourteenth Amendment, imposes on States certain duties consistent with their sovereign obligation to ensure that justice shall be done in all criminal prosecutions.  In Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), we held that when a State *suppresses* evidence *favorable to an accused* that is *material* to guilt or to punishment, the State violates the defendant's right to due process, irrespective of the good faith or bad faith of the prosecution.

Cone v. Bell, 556 U.S. 449, 451 (2009) (emphasis added; citations and quotation marks omitted). Accordingly, to prevail on a Brady claim, a petitioner must prove three elements:  "(1) the prosecution suppressed evidence, (2) the evidence was favorable to the defense, and (3) the evidence was material to his guilt or punishment."  Mahler v. Kaylo, 537 F.3d 494, 500 (5th Cir. 2008).

Here, petitioner argues that the prosecution falsely informed the defense that Glenn Carter's cellular telephone number was 985-285-9159 while suppressing his actual telephone records showing that he had a different number.  However, petitioner's argument is based on unproven supposition.  Petitioner contends that documentation shows that the state procured two sets of telephone records for Carter, one of which concerned his residential telephone and one of which (petitioner suspects) concerned his cellular telephone.[37]  Petitioner further contends that only the residential telephone records were provided to the defense and that (he suspects) the cellular

---

[37] See Rec. Doc. 1-3, pp. 26-27.

telephone records show a number other than 985-285-9159. However, he has not furnished evidence on either of those points.

The record reflects that the state provided "open file" discovery,[38] and there is no evidence that one set of the records was withheld. Moreover, even if one set was withheld, petitioner has not shown that the withheld records reflected a number other than 985-285-9159. Lastly, petitioner has presented no evidence that 985-285-9159 was not in fact Carter's telephone number. At trial, Brittany Jordan and Cooper testified that Carter's number was 985-285-9159.[39] *Even petitioner himself* testified at trial that 985-285-9159 was Carter's number.[40] Therefore, petitioner simply has not shown that the prosecution in fact suppressed any records, much less records showing that Carter's cellular telephone number was not 985-285-9159.

For these reasons, petitioner has failed to establish that the state court's decision denying this claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Accordingly, relief is not warranted.

## F.  Ineffective Assistance of Counsel

Lastly, plaintiff claims that he received ineffective assistance of counsel at trial. The United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. A petitioner seeking relief must demonstrate that counsel's performance was

---

[38]  State Rec., Vol. III of VIII, transcript of October 8, 2009, p. 321.

[39]  State Rec., Vol. IV of VIII, trial transcript, pp. 494 and 533.

[40]  State Rec., Vol. V of VIII, trial transcript, p. 692.

deficient *and* that the deficient performance prejudiced his defense.  Strickland v. Washington, 466 U.S. 668, 697 (1984).   A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."  Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.  Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness."  Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690).  A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  In this context, a reasonable

probability is "a probability sufficient to undermine confidence in the outcome."  Id.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  Crockett, 796 F.2d at 793.

In the state post-conviction proceedings, the state district court denied petitioner's claim, stating that "petitioner has failed to prove grounds upon which relief shall be granted."[41]  His related writ applications were then likewise denied by the Louisiana First Circuit Court of Appeal[42] and the Louisiana Supreme Court.[43]  Because an ineffective assistance of counsel claim presents a mixed question of law and fact, this Court must defer to the state court decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).  Moreover, the United States Supreme Court has explained that, under the AEDPA, federal *habeas corpus* review of ineffective assistance of counsel claims is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable.  This is different from asking whether defense counsel's performance fell below Strickland's standard.  Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district

---

[41]  State Rec., Vol. I of VIII, Order dated July 17, 2012.

[42]  State v. Washington, No. 2012 KW 1364 (La. App. 1st Cir. Oct. 29, 2012); State Rec., Vol. I of VIII.

[43]  State *ex rel.* Washington v. State, 120 So.3d 277 (La. 2013); State Rec., Vol. I of VIII.

court.  Under AEDPA, though, it is a necessary premise that the two questions are different.  For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law.  A state court must be granted a deference and latitude that are not in operation when the case involves review under the <u>Strickland</u> standard itself.

A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision.  <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004).  And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."  <u>Ibid</u>.  "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court."  <u>Knowles v. Mirzayance</u>, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

<u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011) (citation omitted).  The Supreme Court then explained:

Surmounting <u>Strickland</u>'s high bar is never an easy task.  An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the <u>Strickland</u> standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve.  Even under *de novo* review, the standard for judging counsel's representation is a most deferential one.  Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.  It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence.  The question is whether an attorney's representation amounted to incompetence under prevailing professional norms,  not whether it deviated from best practices or most common custom.

Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult.  *The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and*

> *when the two apply in tandem, review is doubly so.* The <u>Strickland</u>
> standard is a general one, so the range of reasonable applications is
> substantial. Federal habeas courts must guard against the danger of
> equating unreasonableness under <u>Strickland</u> with unreasonableness
> under § 2254(d). *When § 2254(d) applies, the question is not*
> *whether counsel's actions were reasonable. The question is whether*
> *there is any reasonable argument that counsel satisfied <u>Strickland</u>'s*
> *deferential standard.*

<u>Id</u>. at 105 (citations omitted; emphasis added). For the following reasons, under those stringently

deferential standards, it simply cannot be said that relief is warranted with respect to petitioner's

ineffective assistance of counsel claims.

In the instant case, petitioner alleges that defense counsel failed "to investigate

evidence, interview witness, and present exculpatory and impeachment evidence."[44] Specifically,

he argues that his counsel's performance was deficient in the following respects:

> (1)   Counsel failed to interview witnesses or perform an adequate
>
>       investigation in order to show that Cooper's testimony was
>
>       false.
>
> (2)   Counsel failed to interview Carter and "investigate the
>
>       dynamics of his confession."
>
> (3)   Counsel failed to investigate telephone records which
>
>       petitioner suggests would have shown that Cooper's
>
>       testimony was inaccurate in various respects.
>
> (4)   Counsel failed to interview Natalie Casborn.

---

[44]  Rec. Doc. 1, p. 17.

(5)     Counsel failed to interview or subpoena Luis Martinez-Avila or utilize his prior statements.

(6)     Counsel failed to investigate, interview, and impeach Jose Roberto Romero-Echogoyen.

(7)     Counsel failed to utilize a crime scene photograph at trial.

(8)     Counsel failed to investigate and present evidence showing that the true killer could have been Juan Carlos Reyes-Gonzalez, who had allegedly threatened the victims.

(9)     Counsel failed to call Detective Stacey Callendar and other detectives as witnesses.

(10)    Counsel failed to interview and subpoena Ryshon Donaldson.

(11)    Counsel failed to investigate whether 985-285-9159 was in fact Carter's cell phone number.

(12)    Counsel failed to investigate or call Dennis Ducre as a witness.

(13)    Counsel failed to request a continuance to secure the testimony of Natalie Casborn.

With respect to counsel's purportedly inadequate measures to investigate this case, petitioner's allegations are entirely speculative and unsubstantiated.  Although he alleged that defense counsel failed to investigate particular aspects of the case and interview certain individuals, petitioner provided no evidence, such as affidavits from defense counsel or those individuals, in

support of his claims.  As noted, petitioner bears the burden of proof with respect to his claim, and he cannot meet that burden by engaging in mere speculation or making bare allegations as to what actions counsel may have taken or failed to take.  Further, there is no basis for this Court simply to assume that petitioner's allegations are true, in that other explanations are equally likely.  For example, counsel may well have explored the various avenues of investigation, but found that the resulting information gleaned from that investigation was, in her professional opinion, unreliable, contradictory, or at odds with the theory of the defense.  Further, she may have interviewed, or unsuccessfully attempted to interview, the various individuals but found them to be incredible or opted not to call them for other strategic reasons.  Without any proof whatsoever of what counsel actually did and did not do, and without evidence concerning the reasons for her choices, there is no evidentiary foundation for concluding that she performed deficiently or that petitioner was prejudiced by her choices.

Relatedly, petitioner clearly has not met his burden of proof with respect to his claims that counsel was ineffective for failing to call certain witnesses at trial.  The United States Fifth Circuit Court of Appeals has explained:

> Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain.  For this reason, we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense.  This requirement applies to both uncalled lay and expert witnesses.

Woodfox v. Cain, 609 F.3d 774, 808 (5th Cir. 2010) (citations, quotation marks, and brackets omitted); see also Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.").

        Here, petitioner presented no evidence, such as affidavits from the uncalled witnesses, showing that they in fact *were available to testify at trial **and** would have testified in a manner beneficial to the defense*.  Therefore, he clearly has not met his burden of proof with respect to this claim.  See, e.g., Gray v. Epps, 616 F.3d 436, 443 (5th Cir. 2010); Buniff v. Cain, Civ. Action No. 07-1779, 2011 WL 2669277, at *3 (E.D. La. July 7, 2011); Kron v. Tanner, Civ. Action No. 09-7572, 2010 WL 3470465, at *2 (E.D. La. Aug. 30, 2010).

        Further, it must be noted that several of petitioner's claims concern his dissatisfaction with what appear to be defense counsel's strategic choices and trial tactics, such as not using the crime scene photograph, not cross-examining Romero-Echogoyen more vigorously or attempting to impeach him, and not arguing that Reyes-Gonzalez was the true killer.  However, it must be remembered that "a court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." Bell v. Cone, 535 U.S. 685, 702 (2002).  As a result, federal *habeas* courts presume that trial strategy is objectively reasonable unless clearly proven otherwise.  Strickland, 466 U.S. at 689; Johnson v.

Dretke, 394 F.3d 332, 337 (5th Cir. 2004) ("A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." (quotation marks omitted)); Yohey v. Collins, 985 F.2d 222, 228 (5th Cir. 1993) ("Given the almost infinite variety of possible trial techniques and tactics available to counsel, this Circuit is careful not to second guess legitimate strategic choices.").  Petitioner's allegations are insufficient to overcome this presumption.

Lastly, with respect to plaintiff's claim that counsel was ineffective for failing to request a continuance to secure the testimony of Natalie Casborn at trial, that claim simply makes no sense.  The transcript reflects that Natalie Casborn appeared at trial and testified at length.[45]

For all of these reasons, it is clear that petitioner has not demonstrated that the state court decision rejecting his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Accordingly, utilizing the AEDPA's doubly deferential standards of review applicable to such claims, this Court should likewise deny relief.

## **RECOMMENDATION**

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Jace Washington be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on

---

[45]  State Rec., Vol. V of  VIII, trial transcript, pp. 651-72.

appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[46]

New Orleans, Louisiana, this eleventh day of December, 2015.


DANIEL E. KNOWLES, III
UNITED STATES MAGISTRATE JUDGE

---

[46] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.